UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JARED QUENTIN BROWN,<br><br>                Plaintiff,<br><br>        v.<br><br>CAROLYN W. COLVIN, Commissioner of Social Security,[1]<br><br>                Defendant. | Case No.  1:20-cv-01648-JLT-BAM<br><br>**FINDINGS AND RECOMMENDATIONS REGARDING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**<br><br>(Doc. 18) |

## **INTRODUCTION**

Plaintiff Jared Quentin Brown ("Plaintiff") seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner") denying his application for Disability Insurance Benefits under Title II of the Social Security Act.  The parties' briefing on the motion was submitted, without oral argument, to Magistrate Judge Barbara A. McAuliffe for findings and recommendations. (Docs. 18-20.)  Having considered the parties' briefs, along with the entire record in this case, the Court finds that the decision of the Administrative Law Judge ("ALJ") was not supported by

---

[1] Carolyn W. Colvin became the Acting Commissioner of Social Security on November 30, 2024. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Carolyn W. Colvin is substituted for Andrew Saul as Defendant in this suit.

substantial evidence in the record and was not based upon proper legal standards.  Accordingly, this Court will recommend reversing the agency's determination to deny benefits.

**FACTS AND PRIOR PROCEEDINGS**

Plaintiff applied for Title II Disability Insurance Benefits on July 13, 2017, alleging that he became disabled on February 17, 2017.  AR 242-245[2].  The claim was denied initially on January 5, 2018, and on reconsideration on May 7, 2018.  AR 98-113.  Plaintiff requested a hearing before an administrative law judge ("ALJ") and ALJ Kurt Schuman held a hearing on May 11, 2020.  AR 39-86. ALJ Schuman issued an order denying benefits on the basis that Plaintiff was not disabled on June 10, 2020.  AR 18-38.  Plaintiff sought review of the ALJ's decision, which the Appeals Council denied. AR 1-6.  This appeal followed.

**May 11, 2020 Hearing Testimony**

ALJ Schuman held a telephonic hearing on May 11, 2020.  AR 39-86.  Doris Shriver, an impartial vocational expert, also appeared and testified.  AR 71-85.  Medical expert Dr. Joseph Carver further testified, and Plaintiff's attorney, Mr. Martinez was also present.  The ALJ began by confirming Plaintiff's identity, confirming that Mr. Martinez was Plaintiff's representative, confirming that all participants were in private areas and not recording, and confirming that Plaintiff waived the right to an in-person hearing.  AR 41-45.  The ALJ admitted Exhibits 1A through 11F into the record, with Plaintiff's attorney confirming that the record was complete, that Plaintiff had no objections, and that Plaintiff's attorney would provide the ALJ with his 1696 form.  AR 44.

Upon examination by the ALJ, Plaintiff testified that his date of birth was July 25th, 1969, and that he was 50 years old at the time of the hearing.  AR 48.  Plaintiff testified that he graduated from high school in 1987 but had not had any college courses or vocational training.  *Id.*  Plaintiff said that he was able to read and write; could do simple math including adding and subtracting; had an email address; was on Facebook; and knew how to use Google.  AR 49.  He stated that he was married and

---

[2] References to the Administrative Record will be designated as "AR," followed by the appropriate page number.

that he lived with his spouse, his stepson, and his stepson's family.  *Id.*  Plaintiff testified that he had a driver's license and still drove.  AR 49-50.

Plaintiff testified that he became disabled February 17, 2017, and did not work following that date, but his employer continued to pay him for approximately six months but stopped paying him after September 2017.  AR 50.  Plaintiff said that he was paid by his employer for not working and that he did not attempt to go into work.  *Id.*  He testified that he was having injections in his back and had trouble doing his job.  *Id.*  He said that he asked his employer to hire more help, but his employer refused and expected Plaintiff to do his job even though Plaintiff was on reduced duty.  AR 51.  Plaintiff said that he eventually told his employer that he could not perform the job and that he was probably going to have surgery on his back.  *Id.*  Plaintiff testified that he had a few months to consider surgery and that his doctor wanted him to lose weight and to see how Plaintiff felt.  *Id.*  Plaintiff said that he did not feel better following that time period and the pain was still there.  *Id.*  He testified that he had a fusion on his back in August 2017 and also had injections in his neck due to his neck pain.  *Id.*  Plaintiff testified that he did physical therapy ten years in the past due to a previous accident but had not recently done physical therapy for his neck pain.  AR 52.  He said that he had treatment on his lower back in approximately May or June 2016 prior to his surgery.  *Id.*  He said he had not had epidural steroid injections on his lumbar since his surgery.  *Id.*  He stated that he had not received treatment for his knee as a specialist "basically told [him] there was nothing wrong with [his] knee" following his knee swelling and Plaintiff declined injections for that.  AR 52-53.

Plaintiff testified that he did not have diabetes but was pre-diabetic, and that he was in the 250 pound range.  AR 53.  He said that he had not received dietary counseling but that his doctor told him to lose weight prior to his lumbar surgery, during which he lost close to 40 pounds.  *Id.*  Plaintiff stated that he had since gained back the weight and that he had his blood sugar checked every six months but did not have diabetes.  AR 53-54.  He said that he was taking Norco for pain, Gabapentin for nerve pain, Cyclobenzaprine for muscle spasms, Amlodipine for high blood pressure, Lipitor for high cholesterol, HCTZ for high blood pressure, Ibuprofen, Asper cream, and Theraworx for muscle cramps.  AR 54-55.  He stated that he discontinued taking anxiety medication after a month as he felt very angry when he would take the medication as a side effect.  AR 55-56.  He said that he was never

on depression medication and was not in counseling at the time of the hearing but had been in counseling during 2018. AR 56. Plaintiff said that he had done the offered ten free sessions of counseling but then did not have the money to proceed with further counseling. *Id.* He stated that he was never hospitalized and never had to go to the emergency room due to psychological issues. *Id.*

Plaintiff testified that he was able to dress himself; could put his socks and shoes on by using a sock slider and slip-on shoes; could put on pants and shirts; could wash his hair in the shower by sitting on a shower chair; had a beard so did not shave very often; and would trim his own beard. AR 57. He said that his wife did not work. *Id.* He stated that he did not do the grocery shopping, and previously would go to the grocery store but had not done so in a few months. AR 57-58. He stated that he did not use a cane or walker. AR 58.

Upon examination by his attorney, Plaintiff testified that the furthest he had driven since February 2017 was 75 to 80 miles, during which he had to stop along the way to get out, stretch his legs, and let his wife drive the rest of the way. *Id.* He said that when he was in town, he would usually drive. *Id.* He testified that he used a back brace for his lower back when he would do physical activity such as yardwork or doing dishes. AR 59. He stated that he was able to do yardwork for 20 to 30 minutes before needing to stop to take a break. *Id.* Plaintiff testified that the pain was in his lower back and in the cervical area of his neck. *Id.* He said that he would rake, do a little weeding for approximately 15 minutes, and use a lightweight weed eater that weighed approximately ten pounds. AR 59-60. He said that he could lift up to 20 pounds, such as groceries or a 20-pound bag of ice, occasionally but not repetitively. AR 60. He said that he did not do anything for exercise except for yardwork, but had previously walked and worked out with one-pound dumbbells. *Id.* Plaintiff said that he could wash dishes for 15 minutes before his upper back would begin to bother him. AR 61. He also said that had pain in his neck from the back of his skull to his shoulder blades that was exacerbated by doing dishes and cause pain from the upper part of his shoulders to his fingers. *Id.* He further testified that the pain was aggravated by a combination of using his upper extremities and neck. *Id.*

The ALJ then examined medical expert Dr. Joseph Carver, who testified that his curriculum vitae correctly stated his professional qualifications, that he was a clinical psychologist, that he had not

examined or treated Plaintiff, that he had not discussed the merits of the case, that he had reviewed the medical evidence, and that he had listened to Plaintiff's testimony.  AR 61-62.  Plaintiff's attorney did not object to Dr. Carver serving as medical expert.  AR 62.  Dr. Carver first noted that page 2 of Exhibit 7F appeared to be from a file of someone who was not Plaintiff.  AR 63.  Dr. Carver testified that he had sufficient medical evidence to establish the presence of a medically determinable mental impairment and that he was familiar with the listing of impairments made by the Commissioner.  AR 63.

Dr. Carver stated that he considered three listings: 12.04, regarding depression, bipolar and related disorders; 12.06, regarding anxiety and obsessive compulsive disorder; 12.15, regarding trauma and stress-related disorders; and 12.07, regarding somatic symptom disorder.  AR 64.  Related to Listing 12.04, Dr. Carver testified that there was a diagnosis of major depressive disorder, single episode, severe.  *Id.*  Related to Listing 12.06, Dr. Carver stated that there was a diagnosis of generalized anxiety disorder.  *Id.* Related to Listing 12.15, Dr. Carver stated that there was a diagnosis of post-traumatic stress disorder.  *Id.*  Related to listing 12.07, Dr. Carver testified that he found no evidence of anything under that listing, as there was nothing to suggest psychological exaggeration or malingering.  *Id.*  Dr. Carver testified that the A criteria for listing 12.04 were satisfied, as Plaintiff had depression, diminished interest, sleep disorder, psychomotor agitation, and difficulty in concentration.  AR 65.  Dr. Carver testified that the A criteria for listing 12.06 were satisfied, as Plaintiff had restlessness, was easily fatigued, had difficulty in concentration, had irritability, and had muscle tension.  *Id.*  Dr. Carver stated that the A criteria were not satisfied for listing 12.15, as the entire syndrome of post-traumatic stress disorder was not met despite some uncomfortable childhood feelings discussed during Plaintiff's ten psychotherapy sessions.  AR 65-66.

Regarding the B criteria, Dr. Carver stated that Plaintiff's ability to understand, remember, and apply information was not impaired.  AR 66.  He testified that Plaintiff was a high school graduate and there was no evidence of a learning disability or academic impairment.  *Id.*  Dr. Carver testified that Plaintiff has a mild impairment in interacting with others, was sociable, was not hostile, interacted with others in both the mental health and medical records, said during an interview that anxiety medication made him angry.  *Id.*  Dr. Carver concluded that Plaintiff had mild underlying anxiety and

did a "pretty good job controlling that." AR 66-67. Dr. Carver testified that Plaintiff had a moderate impairment at concentration, persistence, and maintaining pace due to intrusive physical discomfort and pain as well as pain medications that cause drowsiness and other side effects. AR 67. Dr. Carver further stated that Plaintiff did not have an impairment in adapting or managing himself, as he was capable of chores, self-care, transportation, and other tasks, and was primarily limited by medical limitations. *Id.*

Dr. Carver further testified that he considered the C criteria for listings 12.04 and 12.06 and that there was evidence of depression and anxiety over two years, but no evidence of treatment beyond the ten sessions in March to August 2018. AR 67-68. He testified that there was no evidence that Plaintiff received two years of medical treatment, no evidence that Plaintiff , and there was only evidence that Plaintiff had some counseling and some attempt at psychotropic medications. AR 68. Dr. Carver testified that if he were to assume that Plaintiff was compliant with prescribed psychotropic medications, he would expect some functional limitations as a result of the Claimant's impairments. *Id.* Regarding Plaintiff's ability to understand, carry out and remember instructions, Dr. Carver also testified that Plaintiff was capable of handling simple and detailed instructions, and might have had mild difficulty with complex instructions or high-tech instructions. AR 68. Regarding Plaintiff's ability to respond appropriately to supervisors, coworkers or the public, Dr. Carver testified that he would not expect a severe problem in that area and would expect at most mild issues with Plaintiff handling unfamiliar situations. AR 69. He further testified that Plaintiff had no impairment in his ability to use routine judgment or make simple, work-related decisions. *Id.* Regarding Plaintiff's ability to do work that could be dangerous to the Claimant or others, Dr. Carver testified that Plaintiff would have at least a mild impairment working in areas where there was dangerous equipment or where workers needed to be hypervigilant to reduce injuries given Plaintiff's drowsiness created by medication use. *Id.* Regarding Plaintiff's ability to maintain sufficient attention and concentration for extended periods of two-hour segments during the normal workday with normal breaks and work that consists of no more than simple, routine, repetitive tasks, Dr. Carver testified that Plaintiff would have no impairment in simple, routine, repetitive tasks but would have some impairment in tasks that

required higher levels of sustained attention. AR 69-70. Dr. Carver concluded that there were no opinions in the evidence that conflicted with his opinion. AR 70.

Following Dr. Carver's testimony, the ALJ elicited testimony from vocational expert ("VE") Doris Shriver. AR 71-85. The VE stated that her curriculum vitae correctly stated her professional qualifications, she had not had prior personal or professional contact with Plaintiff, that she understood that her role was to be an impartial witness, that she had not discussed the merits of the case, that she was familiar with the Social Security's definitions of unskilled, semiskilled, skilled, sedentary, light, medium, heavy and very heavy work, and that she had reviewed the relevant exhibits but had not received a work history. AR 71-72. The ALJ then asked Plaintiff about his Mixer/Loader job, and Plaintiff stated that he worked that job full-time from 1992 until 2017 and mixed agricultural pesticides and loaded them into airplanes. AR 72-73. Plaintiff said that he worked a Manure Spreading Loader/Driver job part-time from 2005 until 2016, and in that role he loaded fertilizer into the spreaders and operated the spreaders for approximately 20 hours per week for three months per year. AR 72-74. Plaintiff also stated that he worked as an irrigator part-time from 2011 until 2015 or 2016 for ten months per year. AR 73-74. In response to VE questioning, Plaintiff stated that he worked with black hose driplines in his irrigation job, and would drive a four-wheeler up and down almond tree rows until he found a leak to fix. AR 74. He said that he would fix water lines by cutting a hole out of the line and adding an adapter and would clean and flush sprinklers. AR 75.

The VE classified Plaintiff's work as: Irrigator (DOT No. 409.685-014, medium work, SVP 2); Construction Worker II for Plaintiff's work loading pesticides onto planes (DOT No. 869.687-026, very heavy work, SVP 2); and Farm Machine Operator for Plaintiff's work spreading manure (DOT No. 409.683-010, heavy work, SVP 3). AR 75-77. Plaintiff's attorney agreed with the VE's classifications. AR 77. The ALJ asked the VE hypothetical questions and asked the VE to assume an individual with the same age, education, and work experience as Plaintiff, and who would be able to work at the light exertion and limitations in light work as defined by the regulations. AR 77-79. For the first hypothetical, the ALJ asked the VE to assume that the individual should never be required to climb ladders, ropes or scaffolds; could occasionally climb ramps and stairs; could frequently balance but only occasionally stoop, crouch, kneel and crawl; could occasionally reach overhead bilaterally;

must avoid frequent use of moving and/or dangerous machinery and frequent exposure to unprotected heights; was limited to working in a low-stress job, defined as not requiring a worker to cope with work-related circumstances that could be dangerous to the worker or others; could maintain sufficient attention and concentration for extended periods of two-hour segments during a normal workday with normal breaks but only in work that consists of no more than simple, routine, repetitive tasks; was limited to work that required no more than frequent interaction with the public.  AR 78.  The VE testified that the hypothetical individual could not perform Plaintiff's past work.  *Id.*  The ALJ then asked the VE to assume the hypothetical individual could not perform Plaintiff's past work; was considered a person closely approaching advanced age under the regulatory categories; had a high school education; had the same RFC as Plaintiff; and had Plaintiff's past work experience.  AR 78-79.  The VE testified that there were several job examples in the light unskilled category that such an individual could perform, including: Bottling Wine Attendant (DOT No. 920.687-042, SVP 1, with 657,000 jobs nationally); Bone Picker (DOT No. 521.687-022, SVP 1, with 754,000 jobs nationally); and Car Wash Attendant (DOT No. 915.667-010, SVP 2, light work, with 72,500 jobs nationally).  AR 79.

For the second hypothetical, the ALJ asked the VE to assume the same hypothetical individual as the first hypothetical, but modified the exertion limitation from light to seated light, meaning that the individual could lift up to 20 pounds occasionally, could lift or carry up to 10 pounds frequently, could stand or walk approximately four hours per eight-hour workday and sit for approximately six hours per eight-hour workday with normal breaks.  AR 79-80.  The ALJ additionally asked the VE to assume that the hypothetical individual would not be off-task for more than 10% of the work period.  AR 80.  The VE stated that the hypothetical individual could still perform unskilled occupations including: Office Helper (DOT No. 239.567-010, SVP 2, light work, with 158,000 jobs nationally); Marker (DOT No. 209.587-034, SVP 2, light work, with 251,000 jobs nationally); and Parking Lot Attendant (DOT No. 915.473-010, SVP 2, light work, with 82,000 jobs nationally but reduced by 20% to ensure that the worker would not need to walk around the parking lot).  AR 80-81.

For the third hypothetical, the ALJ asked the VE to assume the same hypothetical individual as the second hypothetical but added that, because of a combination of medical conditions, associated

pain, and mental impairments, the individual would require on average two additional breaks each workday lasting between 10 and 20 minutes each in addition to regularly scheduled breaks and would require more than two unscheduled or unexcused absences per month. AR 81. The VE testified that there were no unskilled jobs that the hypothetical individual could perform, and that employers customarily tolerate two to three absences for no more than two to three months with a total of six absences in a year. *Id.* The VE further testified that employers customarily permitted employees three breaks per day, two 15-minute breaks for resting and one approximately 30 to 60 minute-break for a meal. *Id.* The VE testified that exceeding the customary limits on a regular basis would eliminate all jobs in the competitive workplace. AR 81-82. The VE stated that her testimony was consistent with the information found in the DOT and SCO, except for testimony on breaks for which the VE used information that came to her as a vocational expert. AR 82. The VE also stated her testimony regarding overhead reaching and modified exertional limitation was based on her skill as an occupational therapist and a vocational expert. *Id.*

Upon examination by Plaintiff's attorney, the VE stated that Bottling Wine Attendant position had no contact with the public as it was a factory job. *Id.* Plaintiff's attorney then asked the VE to assume a hypothetical individual who could lift or carry only ten pounds frequently and occasionally; could stand or walk for four hours out of an eight-hour day; could sit for six hours out of an eight-hour day; could occasionally climb ramps or stairs; could never climb ladders, ropes, or scaffolds; could occasionally balance, stoop, kneel, crouch, and crawl; could frequently reach overhead with the bilateral upper extremities; and would need to avoid heavy machinery and hazards. AR 83. The VE testified that the limitation to lifting only ten pounds would only permit sedentary jobs. *Id.*

Plaintiff's attorney additionally asked the VE to assume the individual from the first hypothetical; to assume a light work limitation; to assume frequent public interaction; and to assume occasional reaching in all directions with bilateral upper extremities instead of the occasional overhead reaching with bilateral upper extremities limitation. *Id.* The VE said that there would be some jobs, including Investigator of Dealer Accounts (DOT No. 241.367-038, light work, SVP 2) and Furniture Rental Consultant (DOT No. 295.357-018, light work, SVP 2, with 109,000 jobs). AR 84. Plaintiff's attorney then asked the VE to assume the individual from the second hypothetical, and to modify the

1  limitation to standing or walking four hours out of an eight-hour day to the ability to stand and walk at

2  will for a sit/stand option.  *Id.*  The VE testified that the Office Helper and "probably" the Furniture

3  Retail Consultant and Investigator of Dealer Accounts jobs would remain, and the numbers would not

4  be significantly reduced.  AR 84-85.

5  **Medical Record**

6  The relevant medical record was reviewed by the Court and will be referenced below as

7  necessary to this Court's decision.

8  **The ALJ's Decision**

9  Using the Social Security Administration's five-step sequential evaluation process, the ALJ

10  determined that Plaintiff was not disabled under the Social Security Act.  AR 18-38.  Specifically, the

11  ALJ found that Plaintiff had not engaged in substantial gainful activity since the application date of

12  February 17, 2017.  AR 23.  The ALJ identified the following severe impairments: spine disorder;

13  obesity; depression; and generalized anxiety disorder.  *Id.*  The ALJ also identified the following

14  nonsevere impairments: hypertension, pre-diabetes, osteoarthritis of the left knee, carpal tunnel

15  syndrome, and hyperlipidemia.  AR 24.  The ALJ further determined that Plaintiff did not have an

16  impairment or combination of impairments that met or medically equaled any of the listed

17  impairments.  AR 24-26.

18  Based on a review of the entire record, the ALJ found that Plaintiff retained the residual

19  functional capacity ("RFC") to perform light work except that Plaintiff was able to lift or carry up to

20  twenty pounds occasionally and ten pounds frequently; was only able to stand and walk for up to

21  approximately four hours per eight-hour workday, with normal breaks; could never be required to

22  climb ladders, ropes, or scaffolds; was only occasionally able to climb ramps and stairs; could

23  frequently balance; could only occasionally stoop, crouch, kneel, and crawl; could only perform

24  bilateral, overhead reaching occasionally; was required to avoid frequent use of moving and/or

25  dangerous machinery; was required to avoid frequent exposure to unprotected heights; was limited to

26  work in a low stress job, defined as not requiring the worker to cope with work related circumstances

27  that could be dangerous to the worker or others; was able to maintain sufficient attention and

28  concentration for extended periods of two-hour segments during a normal workday with normal

breaks, but only in work that consisted of no more than simple, routine, repetitive tasks; and was limited to work that required no more than frequent interaction with the public.  AR 26-31.  The ALJ considered "all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence," as well as "medical opinion(s) and prior administrative medical finding(s)."  *Id.*

The ALJ found that Plaintiff was unable to perform past relevant work, was defined as a younger individual on the alleged onset date, had at least a high school education, and that transferability of job skills was not an issue because Plaintiff did not have past relevant work.  AR 32. Given Plaintiff's age, education, work experience, and RFC, the ALJ found that there were jobs that existed in significant numbers in the national economy that Plaintiff could perform.  AR 25-26.  The ALJ noted that examples of jobs consistent with Plaintiff's age, education, work experience, and RFC included: (1) Office Helper (DOT No. 239.567-010, SVP 2, unskilled, light, with 158,000 jobs nationally); (2) Marker (DOT No. 209.587-034, SVP 2, unskilled, light, 251,000 jobs nationally); and (3) Parking Lot Attendant (DOT No. 915.473-010, SVP 2, unskilled, light, with 82,000 jobs nationally).  AR 32-33.  The ALJ therefore concluded that Plaintiff had not been disabled since the alleged onset date of February 17, 2017.  AR 33.

## SCOPE OF REVIEW

Congress has provided a limited scope of judicial review of the Commissioner's decision to deny benefits under the Act.  In reviewing findings of fact with respect to such determinations, this Court must determine whether the decision of the Commissioner is supported by substantial evidence. 42 U.S.C. § 405(g).  Substantial evidence means "more than a mere scintilla," *Richardson v. Perales*, 402 U.S. 389, 402 (1971), but less than a preponderance.  *Sorenson v. Weinberger*, 514 F.2d 1112, 1119, n. 10 (9th Cir. 1975).  It is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Richardson*, 402 U.S. at 401.  The record as a whole must be considered, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion.  *Jones v. Heckler*, 760 F.2d 993, 995 (9th Cir. 1985).  In weighing the evidence and making findings, the Commissioner must apply the proper legal standards.  *E.g.,* *Burkhart v. Bowen*, 856 F.2d 1335, 1338 (9th Cir. 1988).  This Court must uphold the Commissioner's

determination that the claimant is not disabled if the Commissioner applied the proper legal standards, and if the Commissioner's findings are supported by substantial evidence.  *See Sanchez v. Sec'y of Health and Human Servs.*, 812 F.2d 509, 510 (9th Cir. 1987).

## REVIEW

In order to qualify for benefits, a claimant must establish that he or she is unable to engage in substantial gainful activity due to a medically determinable physical or mental impairment which has lasted or can be expected to last for a continuous period of not less than twelve months.  42 U.S.C. § 1382c(a)(3)(A).  A claimant must show that he or she has a physical or mental impairment of such severity that he or she is not only unable to do his or her previous work, but cannot, considering his or her age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy.  *Quang Van Han v. Bowen*, 882 F.2d 1453, 1456 (9th Cir. 1989).  The burden is on the claimant to establish disability.  *Terry v. Sullivan*, 903 F.2d 1273, 1275 (9th Cir. 1990).

## DISCUSSION[3]

Plaintiff first argues that the ALJ failed to properly weigh the opinion of treating physician Marlowe C. Marinas, M.D.  (Doc. 18 at 8-11.)  Plaintiff also argues that the ALJ failed to provide clear and convincing reasons for discounting Plaintiff's subjective symptoms.  (*Id.* at 12-15.)

### A.  Evaluation of Medical Opinion

Plaintiff first argues that the ALJ failed to properly weigh the opinion of treating physician Marlowe C. Marinas, M.D.  (Doc. 18 at 8-11.)

Because Plaintiff applied for benefits after March 27, 2017, his claim is governed by the agency's new regulations concerning how an ALJ must evaluate medical opinions. 20 C.F.R. §§ 404.1520c, 416.920c. Under these regulations, the Commissioner does "not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from [a claimant's] medical sources." 20 C.F.R. §§ 404.1520c(a),

---

[3] The parties are advised that this Court has carefully reviewed and considered all of the briefs, including arguments, points and authorities, declarations, and/or exhibits.  Any omission of a reference to any specific argument or brief is not to be construed that the Court did not consider the argument or brief.

416.920c(a). The Commissioner evaluates the persuasiveness of the medical opinions based on the following factors: (1) supportability; (2) consistency; (3) relationship with the claimant; (4) specialization; and (5) other factors, such as "evidence showing a medical source has familiarity with the other evidence in the claim or an understanding of our disability program's policies and evidentiary requirements." 20 C.F.R. §§ 404.1520c(c)(1)-(5), 416.920c(c)(1)-(5). Supportability and consistency are the most important factors. 20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2). Supportability means the extent to which a medical source supports the medical opinion by explaining the "relevant ... objective medical evidence." 20 C.F.R. §§ 404.1520c(c)(1), 416.920c(c)(1); *see also Woods v. Kijakazi*, 32 F.4th 785, 792 (9th Cir. 2022). Consistency means the extent to which a medical opinion is "consistent ... with the evidence from other medical sources and nonmedical sources in the claim." 20 C.F.R. §§ 404.1520c(c)(2), 416.920c(c)(2); *Woods*, 32 F.4th at 792. The Ninth Circuit has clarified that "under the new regulations, an ALJ cannot reject an examining or treating doctor's opinion as unsupported or inconsistent without providing an explanation supported by substantial evidence." *Woods*, 32 F.4th at 792. "The agency must 'articulate ... how persuasive' it finds 'all of the medical opinions' from each doctor or other source, ... and 'explain how [it] considered the supportability and consistency factors' in reaching these findings." *Id*. (internal citations omitted).

On June 19, 2019, Dr. Marlowe Marinas, M.D. opined that Plaintiff could lift and carry up to 11 to 20 pounds for up to one-third of an eight-hour workday, but could never lift and carry 21 or more pounds. AR 626. Dr. Marinas further opined that Plaintiff could sit for a total of four hours, could stand for a total of one hour, and could walk for a total of one hour in an eight-hour workday. AR 627. Dr. Marinas wrote that Plaintiff could sit for two hours at one time, could stand for 30 minutes, and could walk for 15 minutes at a time during an eight-hour workday. *Id.* Dr. Marinas marked that Plaintiff did not require the use of a cane to ambulate, that a cane was not medically necessary, and that Plaintiff could ambulate one-fourth of a mile without the use of a cane. *Id.* Dr. Marinas identified "lumbar laminectomy 8/3/17" and "MRI cervical spine R sided foraminal stenosis @ C3-C4, C4-C5, C5-C6 levels (8/9/18)" as the findings supporting the assessment. *Id.* Dr. Marinas further marked that Plaintiff could climb stairs and ramps, climb ladders or scaffolds, balance, and stoop for up to one-third of an eight-hour workday, but could never kneel, crouch, or crawl. AR 628.

Dr. Marinas noted that the same assessments supporting the sitting, standing, and walking limitations supported the postural activity limitations. *Id.* Dr. Marinas also opined that the limitations began to apply to Plaintiff in August 2017, again noting the lumbar laminectomy. *Id.*

In evaluating the opinion of Dr. Marinas, the ALJ reasoned as follows:

> However, the undersigned finds the opinion of Dr. Marinas at Exhibit 8F page 3, not persuasive. (8F/3). Dr. Marinas opined that the claimant could only stand and walk for one hour, which is not supported by the examination of the claimant. The claimant's physical examinations reveal that although there was tenderness to palpation, the claimant's range of motion was within normal limits. Moreover, this opinion is not consistent with the longitudinal evidence including the claimant's ability to perform a number of activities of daily living including driving, preparing meals, and caring for grandchildren. (4F, 8F generally).

AR 31.

The ALJ's statement appears to address the consistency factor by explaining that the "physical examinations reveal that although there was tenderness to palpation, the claimant's range of motion was within normal limits" and "the longitudinal evidence including the claimant's ability to perform a number of activities of daily living including driving, preparing meals, and caring for grandchildren." AR 31. However, the ALJ does not address the supportability factor. The ALJ does not discuss how Dr. Marinas supported the opinion by reference to a lumbar laminectomy and an MRI of the cervical spine. AR 31, 627. The ALJ also does not otherwise explain the extent to which Dr. Marinas supported the medical opinion by explaining the relevant objective medical evidence. AR 31. Because the ALJ did not address, explain, or otherwise articulate how persuasive he found the opinion or how he considered the factor of supportability, the Court finds that he erred.

Defendant argues that the ALJ appropriately addressed the new regulatory framework and the necessary factors of consistency and supportability. (Doc. 19 at 5-14.) However, Defendant then discusses how the ALJ considered Dr. Marinas's opinion in relation to "other record evidence," another medical opinion, and inconsistency with Plaintiff's reported activities of driving, preparing meals, and caring for grandchildren. (*Id.* at 13-14.) This does not address the supportability factor but only addresses how Dr. Marinas's opinion is consistent with the evidence from other medical and

14

nonmedical sources.  As the ALJ did not address the supportability factor, Defendant's argument that the ALJ appropriately followed the new regulatory framework is incorrect.

Defendant further cites the Ninth Circuit as rejecting a physician opinion that was "inconsistent with medical evidence."  (Doc. 19 at 13.)  However, in that case, the Ninth Circuit examined two physician opinions and noted that the "ALJ declined to give weight to Dr. Medani's opinion regarding Ford's functional limitations, because it was inconsistent with the objective evidence and poorly explained" and "also declined to give weight to Dr. Zipperman's report, because it included conflicting statements, was inconsistent with other evidence in the record, and did not provide useful statements about Ford's functional limitations (instead using terms like 'fair' and 'limited')."  *Ford v. Saul*, 950 F.3d 1141, 1153 (9th Cir. 2020).  In finding that the ALJ appropriately discounted those opinions, the Ninth Circuit highlighted both the opinions' consistency with the broader medical record and their supportability regarding internal explanation.  The cited caselaw does not demonstrate the Ninth Circuit's approves of an ALJ failing to address the supportability factor and, in fact, the Ninth Circuit has held that the "agency must 'articulate ... how persuasive' it finds 'all of the medical opinions' from each doctor or other source, and 'explain how [it] considered the supportability and consistency factors' in reaching these findings."  *Woods*, 32 F.4th at 792 (citations omitted).  The ALJ therefore erred in failing to address the supportability factor.

Accordingly, the ALJ erred in assessing Dr. Marinas's opinion.

**B. Remedy**

The decision whether to remand for further proceedings or order an immediate award of benefits is within the Court's discretion. *See Harman v. Apfel*, 211 F.3d 1172, 1175-78 (9th Cir. 2000). Unless "the record has been fully developed and further administrative proceedings would serve no useful purpose," remand for further proceedings is warranted. *Garrison v. Colvin*, 759 F.3d 995, 1020 (9th Cir. 2014). As it is not clear that "further administrative proceedings would serve no useful purpose," remand for further proceedings is appropriate. *Id.*; *see also Dominguez v. Colvin*, 808 F.3d 403, 407 (9th Cir. 2015) ("A district court may reverse the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing, but the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation.") (internal

1    quotes and citations omitted). On remand, the ALJ should specifically address the factors of

2    supportability and consistency with respect to Dr. Marinas's opinion.

3           Having found that remand is warranted, the Court declines to address Plaintiff's remaining

4    argument that the ALJ failed to provide clear and convincing reasons for discounting Plaintiff's

5    subjective symptoms.  *See Hiler v. Astrue*, 687 F.3d 1208, 1212 (9th Cir. 2012) ("Because we remand

6    the case to the ALJ for the reasons stated, we decline to reach [plaintiff's] alternative ground for

7    remand."); *see also Augustine ex rel. Ramirez v. Astrue*, 536 F.Supp.2d 1147, 1153 n.7 (C.D. Cal.

8    2008) ("[The] Court need not address the other claims plaintiff raises, none of which would provide

9    plaintiff with any further relief than granted, and all of which can be addressed on remand."); *Marcia

10   v. Sullivan*, 900 F.2d 172, 177 n.6 (9th Cir. 1990) ("Because we remand for reconsideration of step

11   three, we do not reach the other arguments raised.").

12          ///

13          ///

14          ///

15          ///

16          ///

17          ///

18          ///

19          ///

20          ///

21          ///

22          ///

23          ///

24          ///

25          ///

26          ///

27          ///

28          ///

16

## CONCLUSION AND RECOMMENDATION

Based on the foregoing, the Court finds that the ALJ's decision is not supported by substantial evidence in the record as a whole and is not based on proper legal standards.  Accordingly, IT IS HEREBY RECOMMENDED as follows:

1.      Plaintiff's appeal from the administrative decision of the Commissioner of Social Security be GRANTED;

2.      The agency's determination to deny benefits be REVERSED; and

3.      The Clerk of this Court be directed to enter judgment in favor of Plaintiff Jared Quentin Brown and against Defendant Carolyn W. Colvin, Acting Commissioner of Social Security.

These Findings and Recommendations will be submitted to the United States District Judge assigned to the case, as required by 28 U.S.C. § 636(b)(l).  Within fourteen (14) days after being served with these findings and recommendations, the parties may file written objections with the Court.  The document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  The parties are advised that the failure to file objections within the specified time may result in the waiver of the "right to challenge the magistrate's factual findings" on appeal. *Wilkerson v. Wheeler*, 772 F.3d 834, 839 (9th Cir. 2014) (citing *Baxter v. Sullivan*, 923 F.2d 1391, 1394 (9th Cir. 1991)).


IT IS SO ORDERED.

Dated:   __**January 3, 2025**__              _____/s/ *Barbara A. McAuliffe*_____
                                                               UNITED STATES MAGISTRATE JUDGE

17